UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH HARRISON,

    Petitioner,

v.　　　　　　　　　　　　　　　　　　　　　　Case No. 2:09-cv-262
　　　　　　　　　　　　　　　　　　　　　　　　HON. ROBERT HOLMES BELL
CATHERINE BAUMAN,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Kenneth Harrison filed this petition for writ of habeas corpus challenging his third habitual offender prison sentences of 2½ to 10 years for possession of counterfeit bank bills (MCL 750.254), 2½ to 20 years for possession of counterfeit tools (MCL 750.255), and 2½ to 14 years for two counts of using a computer to commit a crime (MCL 752.797(3)(d) and MCL 752.797(3)(e)). The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

Petitioner raises the following claim:

I. Petitioner's convictions violate due process because they are based on insufficient evidence.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state

conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.*  A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 412.  Rather, the application must also be "unreasonable."  *Id.*  Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all

2

reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner claims there was insufficient evidence to convict him of possession of counterfeit tools under MCL 750.255. Petitioner argues that the use of a computer during the counterfeiting process does not fulfill the elements of the statute. The Michigan Court of Appeals disagreed with Petitioner's assessment:

> Before considering defendant's argument regarding intent, we first consider the meaning of the language in MCL 750.255 and whether it applies to defendant. Defendant asserts that the evidence was insufficient to support his conviction under this provision, and his derivative conviction under MCL 752.796(1), because the language of the statute does not contemplate the use of a computer to make a counterfeit bill. Defendant contends that the statute prohibits a person from making a tool specifically designed for the purpose of making counterfeit money. Because his computer was not specifically designed to print counterfeit money, it follows that the

3

statute does not contemplate it. We disagree with defendant's interpretation.

We note that the statute at issue was enacted early in Michigan's statehood. RS 1846, ch 155, § 9. As defendant notes, the statute has not been substantially altered since that time and now reads in pertinent part: Any person who shall engrave, make or mend, or begin to engrave, make or mend, any plate, block, press or other tool, instrument or implement, or shall make or provide any paper or other material, adapted or designed for the forging and making any false or counterfeit note, certificate or other bill of credit...issued by lawful authority...and any person who shall have in his possession any such plate or block, engraved in whole or in part, or any press or other tool, instrument or implement, or any paper or other material, adapted and designed as aforesaid, with intent to use the same, or to cause or permit the same to be used in forging or making any such false or counterfeit certificates, bills or notes, shall be guilty of a felony...[MCL 750.255.]

Thus, to sustain a conviction under this provision, the prosecutor must show that defendant has either "engrave[d], ma[de] or men[ded]" a tool, or made or provided paper, or has in his possession such a tool, that is "adapted or designed for the forging and making [of]...counterfeit note[s,]...with the intent to use the same...to be used in forging...counterfeit certificates..." While it is clear to use that the intent of this language is to criminalize the production of a copy or imitation of official, negotiable currency, it is also obvious that the Legislature that drafted the bill could not have anticipated the development of computer technology, let alone how it could be adapted to produce counterfeit currency. It is also true that the named tools in the statute are all things that are physically manipulated in the process of producing an image. Nonetheless, as originally drafted– and still to the present day–the statute speaks broadly of tools, instruments, or implements used to counterfeit currency. And, a computer, scanner, and printer, which defendant used in this case, are all tools because they are "used as a means of accomplishing a task." *Random House Webster's College Dictionary* (1997). Accordingly, we hold that the phrase "other tool," as used within MCL 750.255, plainly encompasses defendant's use of his computer, scanner, printer, and resume paper as tools, instruments, other implements, and paper adapted for counterfeiting.

In rejecting defendant's argument, we note that his position focuses on implements *designed* for such a purpose and ignores instruments *adapted* for such a purpose. The verb "adapt" means, in part, to

4

> "adjust or modify fittingly." *Random House Webster's College Dictionary* (1997). Using an existing computer, scanner, and printer to counterfeit money is dependent upon modifying the intended use of these tools to the goal of creating counterfeit currency.
>
> Further, the evidence presented was sufficient to support defendant's conviction under this provision. Defendant admitted using his computer, scanner, and printer to produce false bills. Defendant said that he scanned images of authentic currency with his scanner, and a detective found images of authentic currency on defendant's computer hard drive. Defendant then adapted the printer and paper to produce counterfeit bills by printing the images on the resume paper. It is plain under these facts that defendant adapted tools that he intended to use, and did use, for forging counterfeit bills.

Michigan Court of Appeals opinion, Docket #17, at 3-4. A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id.* It is clear that the evidence was sufficient to establish that Petitioner committed the crime. The Michigan Court of Appeals' decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner asserts that there was insufficient evidence to convict him of possession of counterfeit bank bills under MCL 750.254. Petitioner argues that he did not intend to pass the counterfeit bills as legal tender. Petitioner claims that he only made the counterfeit bills with the intent to catch a thief that Petitioner alleges was stealing from him. The Michigan Court of Appeals rejected this argument:

Defendant's argument that the evidence was insufficient to support his conviction under MCL 750.254 because he did not intend to pass the bills as legal tender also fails. MCL 750.254, which requires that the prosecutor prove intent beyond a reasonable doubt, provides in relevant part: Any person who shall bring into this state, or shall have in his possession, any false, altered, forged, or counterfeit bill or note in the similitude of the bills or notes payable to the bearer thereof,...with intent to utter or pass the same, or to render the same current as true, knowing the same to be false, forged or counterfeit, shall be guilty of a felony....

Thus, the prosecutor must show that defendant had in his possession a counterfeit bill or bills, and that he intended to "utter" or "pass" or "render" those bills as true, while knowing that those bills are counterfeit. MCL 750.254. To utter means "to put something into circulation. To utter and publish means to offer something as if it is real, whether or not anyone accepts it as real." CJI2d 22.22. To render is "[t]o transmit or deliver." Black's Law Dictionary (8th ed).

Contrary to defendant's position, the evidence and reasonable inferences arising therefrom, support the conclusion that defendant possessed counterfeit bills with the "intent to utter or pass the same, or to render the same current as true." MCL 750.254. Defendant recounted in the recorded phone call with Gerrity the process that he used to make counterfeit bills, implying more than a onetime interest in the subject. Gerrity's mother testified that defendant had said that he had counterfeited money in the past, and defendant's friend testified that she once saw defendant printing out what looked like sheets of money. Defendant's computer revealed that he imaged bills at least three times in October 2005. On the tape, defendant and Gerrity also talked of making money to pass at a casino, with defendant asserting that he could produce $6,000 to $7,000 over the weekend. Defendant also recalled how Gerrity had successfully passed a different counterfeit $100 bill that defendant had given Gerrity to pay for gas. Additionally, defendant's past roommate stated that defendant admitted to counterfeiting money because of debts run up by a gambling addiction and overspending. A trier of fact can infer defendant's intent from his words, acts, means, or the manner used to commit the offense. *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001). All of this evidence sufficiently shows defendant's intent to pass the counterfeit money as legal tender.

While defendant did provide an alternative explanation for his actions, i.e., he created the forged bills to trap an alleged thief, it is for

6

> the trier of fact to assess the credibility of witnesses and the weight to be given the evidence. *People v Passage*, 277 Mich App 175, 177; 743 NW2d 746 (2007). We note that even if the jury had believed defendant's testimony, the evidence would still be sufficient to support his convictions. This is because his testimony revealed his intent to introduce the counterfeit bills into the stream of commerce and to use his computer, printer, and scanner to make the forged bills. Defendant elaborated that his plan was for the person who was stealing from him to take the false bill that he planted, use it, and get caught. The first pass was from himself to the targeted thief. Secondly, the thief was expected to inject it into the stream of commerce. While defendant hoped that the thief would be stopped and caught, he could neither control for that outcome nor did he plan for it. Whether the supposed thief would be caught or not, the bill was passed and uttered twice, as was defendant's intent. Thus, viewing the evidence in light most favorable to the prosecution, it is clear that a rational trier of fact could find that the essential elements of the crimes were proven beyond a reasonable doubt, and we decline to grant the relief requested.

Michigan Court of Appeals opinion, Docket #17, at 4-5. The Michigan Court of Appeals' decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley  
      TIMOTHY P. GREELEY  
      UNITED STATES MAGISTRATE JUDGE

Dated:  August 29, 2011